**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**RYAN FRANCISCO,**

Plaintiff,

v.

**CIVIL ACTION NO. 5:22-CV-218**
Judge Bailey

**TIMOTHY TIBBS, MICHAEL COSTELLO,**
**SHANNON SAMS,** and **SUPERINTENDENT**
**JOSEPH WOOD,**

Defendants.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

Pending before this Court is defendants Shannon Sams and Joseph Wood's Motion for Summary Judgment Regarding Failure to Exhaust Administrative Remedies [Doc. 67] and accompanying Memorandum in Support [Doc. 68]; defendants Timothy Tibbs and Michael Costello's Motion for Summary Judgment [Doc. 69] and accompanying Memorandum in Support [Doc. 70]; and plaintiff's Motion for Partial Summary Judgment on Availability of Administrative Remedies [Doc. 65] and accompanying Memorandum in Support [Doc. 66]. The parties filed respective briefs in opposition to these competing Motions. *See* [Docs. 71, 72 & 73].

## BACKGROUND

On September 8, 2022, plaintiff filed a complaint under 42 U.S.C. § 1983 alleging a series of constitutional violations occurring during his incarceration in Unit A-8 at North Central Regional Jail ("NCRJ"). [Doc. 1]. The complaint identifies four defendants: NCRJ corrections officers Timothy Tibbs and Michael Costello, and NCRJ supervisors Captain Shannon Sams and Superintendent Joseph Wood. [Id. at ¶¶ 4–7].

On November 20, 2022, defendants Sams and Wood filed their Motion to Dismiss, arguing in part that plaintiff's claims fail as a matter of law because he failed to exhaust his administrative remedies. *See* [Docs. 21 & 22]; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In support, defendants Sams and Wood attached NCRJ's grievance policies and procedures and an affidavit by defendant Wood describing those policies and procedures and explaining that plaintiff failed to exhaust those administrative remedies. [Doc. 21-1].

On January 3, 2023, defendants Tibbs and Costello filed their Motion for Judgment on the Pleadings and Memorandum in Support arguing, *inter alia*, that the complaint must be dismissed for failure to exhaust administrative remedies and adopting defendant Wood's affidavit in support. *See* [Docs. 32 & 33].

On March 29, 2023, United States Magistrate Judge James P. Mazzone entered his Report and Recommendation ("R&R") based upon a consideration of the pleadings and pertinent law. [Doc. 43]. Therein, the magistrate judge advised that "plaintiff does not dispute that he has not fully exhausted administrative remedies. Instead, plaintiff raises a number of questions he contends warrant discovery, including whether grievance forms and writing materials were given and whether plaintiff was prevented from exhausting his grievance." [Id. at 9–10]. However, finding that plaintiff failed to meet his "burden of presenting facts demonstrating that [ ] administrative remedies were not actually available to him," the magistrate judge recommended that the motion "be converted into a motion for summary judgment, that the motion be granted, and that this case be dismissed for

2

failure to exhaust administrative remedies." [Id. at 11–13] (emphasis omitted). Following entry of the R&R, plaintiff filed a Motion seeking a period of discovery regarding availability of administrative procedures pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. [Doc. 45]. On April 27, 2023, this Court granted plaintiff's Motion and ordered that "[t]he parties are hereby granted a period of discovery regarding the availability of administrative remedies" and stayed this action pending discovery. [Doc. 50].

On June 14, 2023, this Court lifted the stay in this action and directed submission of a joint status report. [Doc. 62]. On June 22, 2023, this Court entered an Order directing a briefing schedule. [Doc. 64]. The pending Motions followed and are now ripe.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

3

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983). Each motion must be considered individually on its own merits, and

the facts relevant to each must be viewed in the light most favorable to the non-movant. **Mellen v. Bunting**, 327 F.3d 355, 363 (4th Cir. 2003) (citing **Rossignol v. Voorhaar**, 316 F.3d 516, 523 (4th Cir. 2003)).  When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion.  **Rossignol**, 316 F.3d at 523 (quoting **Wightman v. Springfield Terminal Ry. Co.**, 100 F.3d 228, 230 (1st Cir. 1996)).

## THE PRISON LITIGATION REFORM ACT ("PLRA")

The PLRA requires inmates to exhaust their administrative remedies before bringing a lawsuit against prison officials. 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted."  Id.  The PLRA's "exhaustion requirement is mandatory."  **Anderson v. XYZ Corr. Health Servs., Inc.**, 407 F.3d 674, 677 (4th Cir. 2005).  The PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  **Porter v. Nussle**, 534 U.S. 516, 532 (2002).  The exhaustion requirement extends to suits against prison officials.  See **Jones v. Bock**, 549 U.S. 199 (2007).

The exhaustion standard is stringent and requires that parties utilize the available administrative remedies correctly and to their fullest extent before a district court may hear the case.  As informed by the Supreme Court of the United States, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules,

5

because no adjudication system can function effectively without imposing some orderly structure on the course of proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Further, there is no requirement that these rules or remedies "meet federal standards, nor must they be plain, speedy, and effective." *Porter*, 534 U.S. at 524 (internal citations and alternations omitted).

However, when an existing system of administrative remedies has deteriorated such that obtaining remedies is not possible, the prisoners are relieved of the exhaustion requirement. *See Ross v. Blake*, 578 U.S. 632 (2016). "To be sure, if prison officials impede a prisoner's attempts to exhaust by denying that inmate the proper forms, by failing to educate the inmate on the grievance process, or by failing to respond to a proper grievance, a prisoner may be excused from exhaustion requirements." *Washington v. Rounds*, 223 F.Supp.3d 452, 459 (D. Md. 2016) (Motz, J.) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)); *Miller v. Norris*, 247 F.3d 736, 740 (4th Cir. 2001). In considering whether the exhaustion requirement has been met, "[t]he district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Makdessi v. Clarke*, 2012 WL 293155, at *2 (W.D. Va. Jan. 31, 2012) (Conrad, C.J.) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

Failure to exhaust "is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 212–13 (2007)). However, if defendants are able to make a threshold showing of failure to exhaust, the burden of showing that

6

such remedies were unavailable shifts to plaintiff.   The availability of administrative remedies under the PLRA and exhaustion itself are questions of law.   *See **Ray v. Kertes**,* 130 F.App'x 541, 543–44 (3d Cir. 2005).

## THE WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION ("WVDCR") GRIEVANCE PROCESS

WVDCR has promulgated Policy Directive 335.00, which "represents the general administrative remedy procedures for the Division of Corrections and Rehabilitation." [Doc. 55-4 at 3].   As described in Policy Directive 335.00, the grievance policy is summarized as follows:

1.   An individual must file a grievance within 15 days of the event giving rise to the issue or complaint expressed in the grievance.   Grievance forms must be available to all incarcerated individuals, including on all housing units.   Only one issue or complaint may be on each form, and it must pertain directly to the individual filing of the grievance.

2.   Once a form has been obtained and filled out, the individual may submit the form by US mail, depositing it in a "DCR grievance box," or handing it to a DCR employee.   The grievance form shall initially be submitted to the Unit Manager.

3.   The individual "shall be provided a copy of his/her grievance form prior to submission at each level."

4.   The Unit Manager or their designee will log the grievance and assign it a number that includes information on the year, the facility, and a distinct sequential number. In order to track the grievance, "the Unit Manager shall maintain a Grievance Log." Upon information and belief, this is also the point at which a copy to be provided to

7

the inmate should be produced.

5. The Unit Manager will inspect the grievance to determine if it conforms with Policy Directive 335.00.  If it does not, it will be rejected.  Grounds for rejection include:

    a. Failure to file the grievance timely;

    b. Filing a grievance on an issue that was previously grieved;

    c. Failure to seek actual relief;

    d. Including excessive pages;

    e. Writing on both sides of the page;

    f. Including more than one issue per form; or

    g. The presence of a foreign substance.

6. If the grievance is rejected, the Unit Manager will provide a brief explanation for the rejection and the individual will have 10 days to correct and file a new grievance.

7. An individual may appeal a rejected grievance, but the scope of that appeal is limited to the rejection itself, and so appealing the rejection through to the Commissioner does not exhaust administrative remedies as to the issue presented in the grievance.

8. The Unit Manager is responsible for ensuring that "an answer to the grievance is provided back to the inmate within five (5) days."  The response at the first level should be "clear, concise, complete, and professional."  The Unit Manager "is not required to personally answer the grievance, so long as he/she ensures that the grievance ultimately received is timely addressed and, if accepted, answered."

9. Should the answer from the Unit Manager not resolve the issue, the inmate may appeal their grievance to the Superintendent within five days of delivery of the

response.

10.   The individual should be provided with a copy of their grievance prior to submission to the Superintendent.

11.   The Superintendent shall respond to the grievance within five days.

12.   If the individual who filed the grievance does not receive a response from the first level within five days, they may treat the non-response as a denial and appeal to the Superintendent.  The individual must "indicate on the form . . . that the grievance was previously filed without a response."  The Superintendent will investigate the allegation and, if it is determined that no response was given to the initial grievance, the Superintendent "shall require an immediate response from the Unit Manager."

13.   If the Superintendent's response does not resolve the issue, or the Superintendent fails to respond within five days, the individual may appeal to the Commissioner. The appeal must be submitted within five days of receiving the response, or within five days of when a response should have been received.  "The appeal shall be submitted using the same form as was submitted to the Unit Manager and signing the appropriate location."

14.   Each grievance submitted to the Commissioner level must be mailed by first class mail.  Only one grievance per envelope may be submitted.

15.   The individual shall be provided with a copy of their grievance form prior to submission to the Commissioner.

[Id.].

## DISCUSSION

In consideration of the PLRA and the arguments asserted by the parties, this Court finds that defendants have made a clear showing of plaintiff's failure to exhaust, and that showing has not been rebutted by plaintiff.  Plaintiff, throughout his briefing, does not dispute that he did not exhaust administrative remedies; rather, he contends he should be excused from the PLRA's exhaustion requirement because the grievance process was not available on plaintiff's unit during the relevant time frame.[1]  *See* [Doc. 65 at 6–7].  Plaintiff's arguments in this regard are totally belied by his own deposition testimony and the record.

I.    **Plaintiff's deposition testimony demonstrates a failure to exhaust administrative remedies.**

In his deposition, plaintiff testified that NCRJ units are equipped with a video kiosk system that explains the grievance process. [Doc. 65-5 at 50:15–20].  Inmates are required to watch that video upon intake. [Id.].  According to plaintiff, the kiosk video "told you how to file" grievances and explained that "[t]here was nothing wrong with filing.  Filing made it better for you in the long run because it helped make things better for the next person behind you." [Id. at 52:15–20].  Plaintiff agreed that NCRJ "encourage inmates to file

---

[1]More specifically, plaintiff correctly identifies there are three circumstances "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016).  First, "an administrative procedure is unavailable when (despite what regulations of guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643–44.  Third, administrative remedies are not available "when prison administrators thwart inmates from taking advantage or a grievance process through machination, misrepresentation, or intimidation." *Id.*  When one or more of these circumstances arise, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.*; *see also* **Griffin v. Bryant**, 56 F.4th 328, 335 (4th Cir. 2022).

grievances to enhance prison life for . . . inmates." [Id. at 94:23–95:4].   Plaintiff also testified that he and the other inmates were provided with a "blue book" that included that same general substance of the kiosk video regarding NCRJ's grievance policy." [Id. at 66:23–68:8].  Notably, plaintiff acknowledged that he viewed the kiosk video, was provided with the blue book, and was familiar with its content regarding NCRJ's grievance procedures prior to his period of incarceration on Unit A-8. [Id. at 50:3–16; 66:23–67:17; and 68:4–14].

Plaintiff testified that he filed a "total of ten to fourteen grievances from the beginning of A8 to the end of A8." [Id. at 34:5–7].  Plaintiff claims that he "did not receive a response to most of [his] grievances," but he acknowledges that at least two such grievances made their way to his inmate file. [Doc. 45-1 at ¶¶ 7, 10].  Those grievances, which plaintiff filed on consecutive days, both related to plaintiff's claim that he was rehoused to Unit A-8 without due process.  On May 31, 2022, plaintiff was afforded hearings on his grievances, and NCRJ subsequently rejected those grievances as a result. [Doc. 65-5 at 57:6–58:16; 58:15–59:7].  Plaintiff claims that he filed the remainder of his grievances during the first two weeks of his placement on Unit A-8. [Id. at 79:7–10].

Importantly, plaintiff testified that he did not appeal any of the grievances he filed while he was housed on Unit A-8. [Id. at 44:16–19; 48:14–16; 58:8–12; 78:4–12]. Moreover, plaintiff knew that he "could have filed a grievance claiming there was no response to [his] prior grievances," but he elected not to do so. [Id. at 70:19–24].  Plaintiff acknowledged that during the relevant period, he understood the appeals process and even interjected, finishing defense counsel's sentence: "Q. Okay. And you understood that . . . the process is supposed to be, you file a grievance, there is a first-level response.

11

You're entitled to appeal, then to the - A. Superintendent." [Id. at 77:16–12].   Further, plaintiff was never retaliated against for filing a grievance. [Id. at 94:20–22].   And when pressed on plaintiff's "contention that grievances didn't make it down the hallway," plaintiff did not respond. [Id. at 90:21–91:9].

## II.     The record evidence demonstrates a failure to exhaust administrative remedies.

Plaintiff's testimony concerning his conscious failure to exhaust administrative remedies is further supported by the deposition testimony of sister-litigation plaintiffs, which provides, in relevant part:

1.     NCRJ staff, including some of defendants, gathered plaintiffs in Unit A-8 for multiple group sessions regarding how to file grievances while they were being housed in that unit.   *See* [Doc. 55-1 at 10:22–14:13].

2.     Plaintiffs were required to watch a video regarding NCRJ's grievance procedures upon intake.   *See* [Doc. 55-5 at 50:15–20].   The video "told you how to file" grievances and explained that "[t]here was nothing wrong with filing.   Filing made it better for you in the long run because it helped make things better for the next person behind you." [Id. at 52:15–20].   Plaintiff Francisco agreed that NCRJ "encourages inmates to file grievances to enhance personal life for . . . inmates." [Id. at 94:23–95:4].

3.     Plaintiffs were provided with a "blue book" that included the same general substance as the grievance instructions video. [Id. at 66:6–67:17].

4.  None of the plaintiff's witnessed anyone discarding or throwing away any grievance forms.  *See* [Doc. 55-1 at 98:20–99:4; Doc. 55-5 at 90:21–91:9; Doc. 55-11 at 31:19–32:1].

5.  None of the plaintiffs were threatened or retaliated against for filing grievances. [Doc. 55-1 at 103:11–14; Doc. 55-5 at 94:20–22' Doc. 55-11 at 112:16–113:9]. [2]

## III.  Excusing plaintiff's failure to exhaust is an entirely unwarranted avenue given the circumstances of this case.

Based on the undisputed record, this Court declines to excuse plaintiff's failure to exhaust administrative remedies.  This is so because none of plaintiff's three arguments in support of his request to excuse his failure to exhaust are persuasive.

### A.  Plaintiff cannot establish that NCRJ's grievance procedures operated as a "dead end."

Plaintiff argues that "[t]he grievance process in Unit A8 at NCRJ was a dead end [because] [o]f [his] many grievances, only two were ever logged or processed, and both of those were rejected."  [Doc. 65 at 8–9].  In support, plaintiff argues that his grievances were rejected for improper purposes, "placing him in a position where, were he to appeal, he would still not be able to exhaust his administrative remedies as to his alleged improper placement on segregation."  [Id.].  Plaintiff's arguments are unavailing because he was provided with precisely the relief he sought, and there was nothing to appeal.

Further, plaintiff alleges that the fact that he was afforded a hearing regarding the issues set forth in his grievances was an improper basis to reject them.  Plaintiff's contention is misplaced as a hearing date is the only relief plaintiff sought in his May 24,

---

[2]This line of testimony is further supported by the unrebutted affidavit of former Correctional Counselor for Unit A-8 Heather Copeland.  *See* [Doc. 54-3].

2022, grievance, and he was afforded said hearing exactly five working days after he filed that grievance.  Plaintiff's second grievance touched precisely the same issue as the prior grievance, and plaintiff filed both such grievances prior to his hearing.  In other words, plaintiff sought a remedy, NCRJ provided plaintiff with the remedy he sought, and plaintiff now seeks civil damages as a result.  Congress did not intend the PLRA to provide a loophole whereby inmates can utilize available administrative remedies, obtain exactly what they asked for, and then seek civil damages as a result.

Moreover, even if plaintiff's grievances were improperly rejected as non-grievable, plaintiff had every right to appeal those rejections.  To the extent that plaintiff grounds his "dead end" claim on the twelve grievances that plaintiff claims to have filed but did not receive a response to, plaintiff had every right to appeal those non-responses but, for whatever reason, elected not to do so.  This is not the operation of a "dead end" grievance procedure.

### B.    Plaintiff cannot establish that NCRJ's grievance procedures were too opaque to be capable of use.

Plaintiff argues that "[a]dministrative remedies were not available to [him] during the relevant period because the grievance process was so opaque as to be practically incapable of use." [Doc. 66 at 11].  In support, plaintiff relies on purported disparities between various NCRJ documents describing its grievance procedures and the extent to which various NCRJ officials were able to recall the intricacies of those documents during their depositions. [Id. at 9–16].  This argument is totally belied by plaintiff's procedurally successful grievance filing.

14

Further, plaintiff contends that NCRJ's grievance process is opaque because the NCRJ Orientation Handbook states that inmates are required to use electronic kiosks to file grievance forms, but NCRJ's Policy states that "[a]ny inmate may file a grievance utilizing the Inmate Grievance Form." [Id.]. There does not appear to be any disparity between these documents, much less one that would result in a finding of opacity by this Court. Both the Policy and Handbook appear to require that inmates file grievance forms, with an added instruction to use a kiosk to file such forms if the inmate has a pin number equipping them to do so. In any event, plaintiff did not appeal any of the non-responses to the other twelve grievances he claims to have filed during his incarceration on Unit A-8.

Plaintiff's arguments attempting to discredit NCRJ officials regarding their inability to testify about the details of grievance documents is unpersuasive. There is nothing in the PLRA or interpreting case law requiring jail officials to recite the details of their institution's grievance procedures because the PLRA requires only that administrative remedies be transparent enough that the inmates who are subject to it understand how to use it.

In sum, plaintiff cannot establish that NCRJ's grievance procedures were opaque because he was fully aware of and utilized the process on other occasions and then elected not to appeal non-responses to other grievances.

C.    **Plaintiff cannot establish NCRJ's officials denied access to administrative remedies through machination, misrepresentation, or intimidation.**

Plaintiff claims that "administrative remedies were not available to [him] during the relevant time period due to the machination, misrepresentation, and intimidation by prison officials." [Doc. 66 at 18]. These contentions are based on pure speculation. Moreover,

15

this speculation is directly refuted by plaintiff's own deposition testimony as discussed herein.

## CONCLUSION

Plaintiff was required to exhaust all available administrative remedies prior to initiating this action. He did not do so, and no factors exist such that this Court would excuse plaintiff's failure to exhaust. Accordingly, plaintiff's Motion for Partial Summary Judgment on Availability of Administrative Remedies **[Doc. 65]** is **DENIED**. Defendants Shannon Sams and Joseph Wood's Motion for Summary Judgment Regarding Failure to Exhaust Administrative Remedies **[Doc. 67]** is **GRANTED**. Defendants Timothy Tibbs and Michael Costello's Motion for Summary Judgment **[Doc. 69]** is **GRANTED**.

The magistrate judge's R&R **[Doc. 43]** is **ADOPTED**. As such, defendants Shannon Sams and Superintendent Joseph Wood's Motion to Dismiss Plaintiff's Complaint **[Doc. 21]** is converted as recommended and **GRANTED**. Defendants Timothy Tibbs and Michael Costello's Motion for Judgment on the Pleadings **[Doc. 32]** is **DENIED AS MOOT**.

The Clerk is instructed to enter judgment in favor of defendants and to strike this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to forward a copy of this Order to all counsel of record..

**DATED:** July 28, 2023.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**